## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | |
|---|---|
| TRINITY HUNTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CAUSE NO. 3:07-CV-593 |
| v. | ) |
| | ) |
| INDIANA | ) |
| DEPARTMENT OF CORRECTIONS, | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (DE #39). For the reasons set forth below, the motion is **DENIED**.

BACKGROUND

Trinity Hunter ("Hunter"), a pro se prisoner, filed a complaint under 42 U.S.C. § 1983 alleging that defendants, Commissioner David J. Donahue ("Donahue"), Superintendent Ed Buss ("Buss"), Correctional Officer Wise ("Wise"), and Sergeant Harrison ("Harrison"), violated his constitutional rights under the First, Eighth, and Fourteenth Amendments by failing to protect him from another prisoner's attack.

Specifically, Hunter alleges that a prisoner entered his unlocked cell, stabbed him nine times, and caused life-threatening injuries. Hunter claims the attacker was able to enter his cell because Wise left it unlocked in violation of prison policy in retaliation for Hunter's complaints that the correctional officer exhibited favoritism towards black prisoners. Hunter also states that Wise left his cell unlocked because Wise was "racially motivated" and so that an inmate Wise befriended could attack Hunter.

In an Opinion and Order, dated July 31, 2008, this Court granted Hunter leave to proceed on his claim against Wise but dismissed claims against Buss, Donahue, Harrison, and any claims against the Indiana Department of Corrections ("IDOC") and the individual defendants in their official capacities. (DE #29, pp. 1, 7-8). The Court then directed the United States Marshals Service to effect service of process on Wise and further ordered Wise to respond to the complaint. (*Id*. at 1-2.)

On September 22, 2008, Wise, through counsel, filed an answer (DE #38) as well as the instant Motion for Summary Judgment (DE #39). In his Motion, Wise contends that he is entitled to summary judgment because Hunter did not exhaust his administrative remedies. The Court must address this threshold question before addressing the merits of the case. *Pavey v. Conley*, 544 F.3d 739, 741-42 (2008).

FACTS

Triggering the grievance deadline here is the November 25, 2005, knife attack against Hunter. Hunter claims Wise, a former correctional officer, purposely left his cell unlocked so that another prisoner could enter to assault him. (DE #1, p. 4.) Immediately following the attack, Hunter was hospitalized outside of the facility in critical condition. Hunter reports being "life lined" to the hospital where he "died" and was "revived back to life." (DE #50, p. 2.) Due to the severity of his injuries, Hunter remained in intensive care until his return to the facility on November 28, 2005. (*Id.*)

Upon his return Hunter was housed in the facility's infirmary "still . . . heavily drugged up and still in life critical condition." (*Id.* at 3.) Although the record does not show how long Hunter remained in this state, he submitted a request for protective custody on December 7, 2005. (DE #50-4.) At Hunter's request, he also met with internal affairs investigator(s) while he was in the infirmary. (DE #50, p. 3.)

To support his Motion for Summary Judgment, Wise presents the declarations of Howard Morton ("Morton") (DE #40-2) and Jamie Trusty ("Trusty") (DE #40-3). The undisputed facts set forth in these declarations show that before December 1, 2005, the IDOC

3

grievance procedure consisted of five (5) steps.[1]  (DE #40-2, pp. 1-2.)  On December 1, 2005, the procedure changed.  (*Id*. at 2.)  At that point, the period within which a prisoner could timely file a grievance increased from two (2) to twenty (20) days.  (*Id*.)

It is undisputed that, before December 1, 2005, the deadline to file a grievance ended forty-eight hours after the triggering event.  Under the former system, the time for Hunter to submit a grievance expired November 27, 2005, the day before his return from the hospital.  Examination by Morton and Trusty of regularly maintained IDOC records, as well as Hunter's individual prisoner packet, did not reveal any grievance pertaining to the November 25, 2005, incident.  (*Id*. at 3 & DE #40-3, p. 1-2.)  Morton concluded that, as the search revealed no copy of a grievance "filed between November 25, 2005, and December 1, 2005," the plaintiff did not file "a timely grievance at any time concerning any assault occurring on November 25, 2005." (DE #40-2, p. 3.)  Trusty's review of Hunter's packet also "disclosed no grievance filed during the calendar year 2005."  (DE #40-3, p. 1.)  Consequently, Trusty determined "Hunter did not file a grievance at any time in 2005

---

[1] "Before December 1, 2005, the [IDOC's] official procedure regarding grievances filed by adult offenders provided that the grievance process began with a complaint (called "Step 1"); if an offender was not satisfied with the response to the complaint, he could appeal by filing a formal grievance ("Step 2"); if the offender was not satisfied by the Step 2 response, he could appeal to a Grievance Committee ("Step 3")' if the Step 3 response was not satisfactory, the offender could appeal to the Superintendent ("Step 4"); and, it the Step 4 response, from the Superintendent or her designee, was not satosfactory, the offender could appeal to the appropriate Regional Director or designee ("Step 5")."  (DE #40-2, pp. 1-2.)

4

arising from any claim that he was assaulted on or about November 25, 2005." (*Id*. at 1-2.)

However, Hunter argues that he has shown "good cause" for his failure to exhaust administrative remedies because he was in "critical intensive care" for the forty-eight hours following the triggering event and that the old system provided for "no extension of time as to file a grievance." (DE #50, p. 2.) He also asserts that, because information about the new policy was not posted in the infirmary, he did not learn about the longer period to file a grievance until he left the infirmary in February of 2006. (DE #50 at 2-3.) Furthermore, Hunter argues that there is no indication that the new policy, which lengthens the time frame within which to file a grievance, is retroactive. (*Id*. at 2.) Finally, Hunter opines that exhaustion is not required because the administrative grievance process is futile in this instance and could not have provided an adequate remedy. (*Id*. at 2-3.)[2]

Wise replies by stating that, "at some point Plaintiff could have filed a grievance raising the claims he presents in the instant action if he had decided to try" and that he is not "excused from exhausting available administrative remedies by his

---

[2] Hunter also declares that the PLRA is unconstitutional because its exhaustion requirement constitutes a denial of access to the court and denies prisoners equal protection. (DE # 50, p. 5-8.) This last argument is meritless. *See B v. Duff*, 2009 WL 2147936, *11 (N.D. Ill. Jul 17, 2009)(noting that on three occasions the Supreme Court has interpreted and enforced the PLRA's exhaustion requirement that "prisoners (and only prisoners) must exhaust administrative remedies prior to bringing suit.").

5

ignorance of their existence." (DE #62, p. 2.) According to Wise, "[i]t all comes down to the simple fact that Plaintiff did not try to grieve, even belatedly. Had he done so, he might have been given some relief." (*Id.* at 4.)

DISCUSSION

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A party opposing a properly supported summary judgment motion "may not rely merely on allegations or denials in its own pleading" but rather must introduce affidavits or other evidence to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001).

To determine whether a genuine issue of material fact exists, the Court must review the record, construing all facts in the light

most favorable to the non-moving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (*citing Anderson*, 477 U.S. at 255). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook*, 184 F.3d 689, 691 (7th Cir. 1999) (*quoting Smith v. Severn*, 129 F.3d 419, 425 (7th Cir. 1997)). Further, the Court cannot decide the credibility of witnesses or weigh the evidence in deciding a summary judgment motion. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 627 (7th Cir. 2006). The standard for reviewing a summary judgment motion is the same regardless of whether a party is represented by counsel. *Outlaw v. Newkirk*, 259 F.3d 833, 836-37 (7th Cir. 2001).

In pertinent part 42 U.S.C. § 1997e(a) provides:

> No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Exhaustion is an affirmative defense, and the defendant bears the burden of proof. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). To exhaust administrative remedies, a prisoner must comply with all steps the jail's grievance system prescribes. *See Woodford v. Ngo*, 548 U.S. 81 (2006); *Kaba v. Stepp*, 458 F.3d 678, 683-84 (7th Cir. 2006). This circuit takes a strict compliance

7

approach to exhaustion. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."). Exhaustion is required even if the prisoner believes his efforts in securing relief will be futile, *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001), or if the administrative authority has no power to grant the requested relief, *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Dole v. Chandler*, 438 F.3d 804, 808-09 (7th Cir. 2006). However, "[i]f administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust." *Kaba,* 458 F.3d at 684. Yet, "when the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited." *Id.; see also Canady v. Davis*, 2009 WL 1177081, *3 fn. 1 (N.D. Ill. April 29, 2009)(granting summary judgment where prisoner deliberately bypassed grievance procedure because he thought it would be useless).

It is important to note that "[t]he ability to take advantage of administrative grievances is not always an 'either-or' proposition. Sometimes grievances are clearly available; sometimes they are not; and sometimes there is a middle ground. . . ." *Kaba*, 458 F. 3d at 685. Cases falling within that middle ground require a "more discriminating analysis." *Id*.

Wise argues that Hunter forfeited his right to file this action because the record shows Hunter filed no grievance in 2005, and the sole grievance that he filed in 2006 did not relate to the November 2005 assault. (DE #40, p. 8-9.) Wise contends that "at some point Plaintiff could have filed a grievance raising the claims he presents in the instant action if he had decided to try." (DE #62, p. 2.) Wise's "all or nothing" reliance on the mere fact that the facility had a grievance system in place throughout the period following the attack runs contrary to *Kaba's* teaching that some cases, such as this one, are within a grey area and require a more detailed probe.

Hunter maintains that his rights should not be forfeited because the grievance system was unavailable to him for several reasons. First, he asserts that the deadline to submit a grievance under the former system expired before he left the hospital. Hunter asserts that he could not physically file a grievance during his hospitalization. Wise does not dispute this fact. Hunter further maintains that, even after he left the hospital, his physical and emotional condition prevented him from filing a grievance for some time. Next, although the IDOC adopted a new grievance system, Hunter claims he did not learn of the new procedure until after he left the infirmary because no notices were posted there. Moreover, he contends unidentified prison officials told him the new policy was not retroactive. Finally, Hunter

9

argues it is futile to exhaust any administrative remedies Wise points to, such as separating the plaintiff from his attacker or mandating Wise's dismissal, because the remedies are ineffectual and he seeks only monetary damages. (DE #50, pp. 2, 6.)

As an initial matter, the Court will address Hunter's futility argument. In light of Hunter's argument that exhaustion was futile, Wise implies that the Court should infer he deliberately chose to file this lawsuit instead of following the administrative process as required, and, therefore, this lawsuit should be dismissed.

The Seventh Circuit has recognized that, in regard to exhaustion requirements and futility, there can be a distinction between a prisoner seeking both monetary and injunctive remedies that have yet to be addressed verses a prisoner seeking monetary relief only. In *Thornton v. Snyder*, 428 F. 3d 690 (7th Cir. 2005), prisoner Thornton appealed from the district court's grant of summary judgment on the claim that he did not exhaust his administrative remedies before filing a lawsuit seeking monetary damages for allegedly unconstitutional cell conditions. Because the facility remedied the complained of cell conditions upon which Thornton based the lawsuit before the grievance process concluded, he did not pursue the administrative process to completion. The court found, however, that Thornton had appropriately exhausted administrative remedies as to the cell conditions claim. In doing

so, the Seventh Circuit observed that Thornton's situation differed from that of the plaintiff in *Booth v. Churner*, 532 U.S. 731 (2002). Because the plaintiff in *Booth* sought both monetary and injunctive relief, he was required to exhaust the administrative process which could have provided some relief, even if it was not monetary. In contrast, Thornton received all the relief that he had requested in grievances; only the issue of money damages remained. *Thorton*, 428 F.3d at 696-97. "The requirement to exhaust 'all available' remedies requires that *some* remedy is available to the inmate through the administrative process, even if not necessarily the relief desired." *Id*. at 695 (emphasis in original). The *Thornton* panel explicitly recognized that:

> It is possible to imagine cases in which the harm is done and no further administrative action could supply *any* 'remedy.' . . . Suppose the prisoner breaks his leg and claims delay in setting the bone is cruel and unusual punishment. If the injury has healed by the time suit begins, nothing other than damages could be a 'remedy,' and if the administrative process cannot provide compensation then there is no administrative remedy to exhaust.

*Id.* (*citing Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 538 (7th Cir. 1999) (emphasis in original).

Here, Hunter received protective custody before he brought this action. Hunter also says that prison officials told him a criminal prosecution resulted from the attack against him, although he did not know the defendant's identity. Given these facts, the Court understands Hunter's protest that exhausting the

11

administrative process would be futile to mean he had obtained all available administrative remedies. Normally, under such circumstances and as recognized by *Thornton*, exhaustion would not be mandated because a prisoner has nothing left to exhaust. *See Ruiz v. Tilman*, 2009 WL 528680, *5 (N.D. Ill. Feb. 25, 2009).

However, unlike the plaintiff in *Thornton*, Hunter never started the grievance process; thus his futility argument misses the mark at this stage. Hunter does not deny that he did not file a grievance related to the November incident. Consequently, if no material question of fact exits regarding the availability of a grievance procedure, Wise is entitled to judgment.

To determine whether Wise is entitled to judgment, the Court must review Hunter's other claims regarding exhaustion. First, Hunter argues that he has shown "good cause" for his failure to exhaust administrative remedies because he was in "critical intensive care" for the forty-eight hours following the triggering event and that the old system provided for "no extension of time as to file a grievance." (DE #50, p. 2.) As Hunter points out, when he returned to the facility following his hospital stay, he was "immediately housed in the prison infirmary where [he] was heavily medicated" and in "shock." By that time, it was too late to file a grievance under the old system. (DE #43, pp. 1, 3.) The two-day period to file a grievance expired on November 27, 2005. The applicable provision states "[t]he incident of the complaint must

12

have occurred within forty-eight (48) hours of the time the offender first attempted to resolve the problem." (DE #50-2.) Hunter returned to the facility a day later, on November 28, 2009. According to Hunter, the deadline could not be extended, and Wise does not dispute this claim. Wise does not explain or provide any evidence how, under these circumstances, Hunter could properly exhaust a grievance using the defunct grievance procedure. Consequently, Wise not met the burden of establishing that the old system was available for Hunter to exhaust, and summary judgment must be denied unless Wise can show the availability of an alternative procedure.

To do so, Wise argues that three days after Hunter's return to the facility, on December 1, 2005, a new grievance system became effective, lengthening the period to file a grievance to twenty days. Like the old system, the time period for the grievance begins when the event giving rise to the grievance occurs. (DE #50-3.) At the time Hunter returned to the facility, the deadline had not passed to file a timely grievance in accordance with the new policy. Thus, Wise contends, the new policy was available for Hunter to utilize.

However, Hunter asserts that his physical and mental condition prevented him from filing a grievance before the twenty day period expired. Indeed, several recent cases have suggested that a prisoner's physical and mental infirmities may render

13

administrative remedies unavailable. *Johnson-Ester v. Elyea*, 2009 WL 632250 *6 (N.D. Ill. March 9, 2009) (*citing Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008)). Whether Hunter's infirmities made it impossible for him to file a grievance before December 20, 2009, is a disputed question. Notwithstanding, the Court notes that Hunter's exhibits do show he submitted a request for protective custody on December 5, 2005, and again on January 16, 2006. (DE # 50-4; DE # 50-5.) The record also shows that Hunter did not remain in critical condition throughout his two-month stay in the prison infirmary. Under the circumstances, it is not reasonable to infer that Hunter was physically and/or mentally incapable of also filing a grievance within the timeframe established under the new grievance system. Thus, Hunter's argument of physical and mental incapacity related to the new grievance procedure misses the mark.

Alternatively, to explain why he did not file a grievance before the extended deadline expired, Hunter maintains he did not learn of the new procedure until after his discharge from the infirmary in February 2006 because no information about it was posted there. (DE #50, p. 2; DE # 50-7, p. 2.) In response, Wise points out that Hunter admittedly left the infirmary for an hour a day for recreation, which would have allowed him time to learn about the new procedure. (DE #62, p. 2.) It is true that Hunter even somewhat boastfully declares that he knows "how to look for anything to help me." (DE # 50-7, p. 2.) Wise offers this

statement to support his proposition that Hunter did not investigate the new grievance system's availability. However, as all reasonable inferences must be drawn in Hunter's favor, the Court interprets these statements to mean that, if the facility had made the information available in the areas to which he was confined during that period, he would have discovered it. Additionally, the fact that Hunter twice submitted requests for protective custody supports the inference that, if he knew of the new grievance system, he would have invoked it.

Wise does not provide any evidence that information about the new grievance procedure was posted or otherwise disseminated in areas Hunter could access while he was in the infirmary. Also, the record does not show Hunter was well enough to leave the infirmary for recreation before the 20-day timeframe expired. As such, Hunter's argument that the new grievance system was unavailable to him due to incapacity is persuasive.

This is especially true when viewed in light of Hunter's claims regarding the non-retroactivity of the new policy. If the new system was functionally unavailable, it is irrelevant whether or not Hunter had the capacity to submit a grievance. Aside from the declarations that Wise submitted in support of the motion, a copy of the announcement about the new grievance procedure Hunter attached to his response is the only proof the Court has to show what it entails. In pertinent part it states "[a]n offender

wishing to file a formal written grievance shall file such grievance within 20 working days from the date of the incident triggering the grievance. The Facility Head may waive the time frame if there is a valid reason for doing so." (DE #50-3.)

Only one grievance system, the new one, was in effect at the time of Hunter's release from the infirmary. Hunter maintains that, "no where with in (sic) the old or new grievance procedures that [sic] provide that any incident(s) are retroactive and in turn they can be grieved." (DE #50, p. 2.) In an effort to counter this claim, Wise relies on the ameliorative provision quoted above allowing the Facility Head to waive the time limitations for a "valid reason." (DE #62, p. 4.) Wise's argument falls short.

The language summarizing the new procedure in the notice does not disclose the possibility a grievance could be filed relating to something that happened before the new policy's starting date. Correlatively, it is not apparent the new grievance process applies to incidents that predate its enactment. Wise does not offer any evidence the new grievance system applies where the potential grievance stems from events that took place before its installation, notwithstanding the provision allowing the Final Authority to excuse an untimely filing. The waiver provision Wise points to is ambiguous, because waiver is not the same as retroactive application.

Viewed in the light most favorable to Hunter, the December 1, 2005, starting date suggests the procedure only applies prospectively. Wise has not shown that any provision of the new grievance procedure establishes that it covers a case like this one where the pertinent events straddle the end of the old grievance system and the start of the new. If the current system is not retroactive, Hunter was effectively "mousetrapped." *See McCoy v. Gilbert*, 270 F.3d 503, 511 (7th Cir. 2001) (*citing Burris v. Parke*, 95 F.3d 465, 469 (7th Cir. 1995)(en banc); *see also Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (prisoner exhausted available remedies where prison officials did not instruct on procedure to follow where there was no decision to appeal).

Hunter also contends that prison officials provided him with no information or forms regarding the new policy and specifically told him it did not apply retroactively to events that occurred before its December 1, 2005, start date.[3] (DE #50, p. 2; DE #50-7, p. 2.) During his time in the infirmary, Hunter states he contacted the ombudsman but received no help. (DE #50, p. 2.) Although internal affairs investigators interviewed Hunter at his request (DE #50, p. 3) and provided him forms regarding his request for protective custody,[4] according to Hunter, they did not tell him

---

[3] Hunter further contends these officials instructed him to file a tort claim, as his "best and only move." (DE #50-7, p. 2.)

[4] Hunter's Exhibits show he submitted requests for protective custody on December 7, 2005 (DE #50-4, p. 1) and again on January 16, 2006 (DE #50-5, p. 1). The request was approved February 3, 2006.

17

about the new grievance procedure. (*Id*.) And, perhaps more significantly, as previously noted, Hunter claims prison officials informed him the new grievance procedure did not apply to events before December 1, 2005.

Here, because Hunter communicated extensively with officials regarding the stabbing incident, it is reasonable to infer that prison officials made the new grievance system unavailable to Hunter by failing to ensure information about it was put in the infirmary or other areas Hunter could access while there. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (administrative remedies become "unavailable" if "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting."); *see also Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). Moreover, it is reasonable to infer that, if prison officials specifically told Hunter the new policy was not retroactive, he was effectively impeded from using it. *See Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (a remedy that prison officials impede a prisoner from using is considered "unavailable"); *see also Dole*, 438 F.3d at 811-12. Either circumstance could constitute affirmative misconduct by prison officials that rendered the grievance system unavailable to Hunter.[5]

---

[5] The Court also recognizes that the objective test laid out in *Hemphill v. New York*, 380 F.3d 680 (2nd Cir. 2004) may be useful in a situation such as this. Under *Hemphill*, a court looks at whether "a similarly situated individual of ordinary firmness would have deemed the grievance procedures to be available."

18

In an effort to counter the foregoing analysis, Wise cites *M.C. ex rel. Crider v. Whitcomb*, 2007 WL 854019 (S.D. Ind. March 2, 2007) (*citing Yousef v. Reno*, 254 F.3d 1214, 1221 (10th Cir. 2001) for the proposition that Hunter's ignorance of the new grievance policy does not excuse his failure to exhaust administrative remedies. (DE #62, p. 2.) However, *M.C. ex rel. Crider* is distinguishable because, unlike the situation in this instance, there was no doubt in that case that the grievance system at issue applied. Here, even if Hunter could have filed a grievance under the new system, that would not preclude a determination that his reliance upon misinformation from a prison official regarding the lack of retroactive application rendered it unavailable.

Wise's reliance upon *McCoy v. Gilbert*, 270 F.3d 503, 511 (7th Cir. 2001) is similarly misplaced. The issue in *McCoy* was whether to apply the PLRA's exhaustion requirement where the plaintiff did not file a grievance but started the lawsuit after the PLRA went into effect. The grievance system at issue in *McCoy*, which had been in effect for some time when the underlying incident occurred, provided for late grievances. In contrast, the circumstances here

---

*Hemphill*, 380 F.3d at 688. A prison official's pronouncement that the new grievance process was not retroactive could convince a similarly situated individual of ordinary firmness that the grievance system was indeed unavailable. While the Court believes the IDOC would not leave prisoners without a grievance process, the Court must accept as true Hunter's assertion prison official(s) advised him the new system was not retroactive. On this record, the Court cannot resolve that question in Wise's favor.

involve adoption of a system that was not even in effect when the triggering event arose.

Consequently, Wise has not met his burden of establishing that Hunter failed to exhaust available administrative remedies. Wise has not shown the new grievance system applies retroactively. Also, material questions of fact exist as to whether the facility rendered the new grievance system unavailable to Hunter by not posting notices in areas to which he had access while recuperating in the infirmary, whether the investigation Hunter initiated sufficiently alerted prison officials of his claim against Wise, and/or whether any prison official told Hunter the new grievance system was not retroactive. Accordingly, summary judgment must be denied.

CONCLUSION

For the reasons set forth above, the Defendant's Motion for Summary Judgment (DE #39) is **DENIED**.

**DATED: September 29, 2009**        /s/RUDY LOZANO, Judge
                                               **United States District Court**